John D. O'BRIEN, Mario P. Borini and Farrow J. Smith, as the joint Personal Representatives of the Estate of G.B. Henderson, Deceased, Plaintiffs–Appellees,

v.

VILLAGE LAND COMPANY, A Colorado Corporation, Defendant–Appellant.

No. 87CA0622.

Colorado Court of Appeals, Div. V.

Dec. 1, 1988.

As Modified on Denial of Rehearing March 30, 1989.

Certiorari Granted Sept. 11, 1989.

Dietze, Davis & Porter, P.C., Peter C. Dietze, Boulder, for plaintiffs-appellees.

Berenbaum & Weinshienk, Amy Therese Loper, Denver, for defendant-appellant.

JONES, Judge.

This case involves the interpretation of a deed between Village Land Company (Village) and G.B. Henderson, now deceased. We reverse.

The plaintiffs are the personal representatives of the estate of Henderson. The deed at issue was executed at a closing in which one Ogren conveyed a 380–acre tract to Village. The deed contained language "RESERVING and undivided one-half interest in and to all oil, gas and other minerals (except sand, gravel and associated minerals) . . ." to Ogren.

Village, at this same closing, conveyed a 60–acre parcel of the 380–acre tract to Henderson. The deed setting forth this transaction contained language:

"RESERVING an undivided one-half interest in and to all oil, gas and other minerals (except sand and gravel and associated minerals) . . ."

The 60 acres are conveyed, except for the reservation noted, free and clear subject to the following language:

"EXCEPT [for] easements and rights of way . . . and all leases . . . and special use permits . . . restrictive covenants *and any and all other items and agreements of record.*" (emphasis supplied)

The Ogren-to-Village deed was recorded prior to the Village-to-Henderson deed, as a consequence of which the reservation to Ogren became an "[agreement] of record."

After a dispute arose between the parties concerning ownership of the oil, gas and other minerals (minerals) in the 60–acre

parcel, plaintiffs filed a complaint asserting, *inter alia*, that the language in Henderson's deed only recognized the Ogren reservation and passed title to the other undivided one-half interest in the minerals to Henderson. In its answer and counterclaim, Village alleged that the deed "speaks for itself, and conveys exactly what it purports to convey and conveys what [Village] agreed to convey to [Henderson]."

The trial court refused to find that the language of the deed was ambiguous, ruling instead that "the deed speaks for itself...." Consequently, the court granted summary judgment in favor of the personal representatives of Henderson's estate, thereby giving the estate a one-half interest in the minerals on the 60 acres described in the Village-to-Henderson deed.

Village asserts, on appeal, that the deed is ambiguous as a matter of law. It further contends that, as a result of the existence of an ambiguity, the intent of its officer, Pavlakis, should be considered by this court in apportioning the mineral interests. Pavlakis' alleged intent was to convey to Henderson one-half of the one-half not reserved by Ogren in the original conveyance, thereby leaving one-half of the totality with Ogren, one-fourth with Village, and one-fourth with Henderson.

The plaintiffs, on the other hand, contend that the plain language of the deed requires that this court consider only those matters contained within the deed and, therefore, not consider the subjective intent of Pavlakis.

■ We agree with the finding of the trial court that the deed was clear on its face. However, we do not agree that its terms specifically granted to Henderson a one-half interest in the minerals · on the 60–acre parcel.

If the language of a document is plain, its meaning clear, and no absurdity is involved, it must be declared and enforced by the court as written. *Christmas v. Cooley,* 158 Colo. 297, 406 P.2d 333 (1965). Nor will we torture words and phrases to create an ambiguity where the ordinary meaning of the words leaves no room for ambiguity.

*In re Marriage of Blair,* 649 P.2d 344 (Colo.App.1982); *Lampley v. Celebrity Homes, Inc.,* 42 Colo.App. 359, 594 P.2d 605 (1979).

An ambiguity is an uncertainty of the meaning of language used in a written instrument. *Bledsoe v. Hill,* 747 P.2d 10 (Colo.App.1987). The question of ambiguity of a document is one of law, *Bledsoe v. Hill, supra,* and is to be answered by an examination of the language of the document in which words are to be construed in harmony with their accepted meaning and with reference to all provisions of the document. *Radiology Professional Corporation v. Trinidad Area Health Association,* 195 Colo. 253, 577 P.2d 748 (1978); *Ray L. Atchison Construction Co. v. Sossaman,* 717 P.2d 988 (Colo.App.1985).

■ Here, Village does not assert that the words "reservation" and "exception" are unclear. The definitions of these words, as applied here, are consistent with those meanings as previously considered, in *Brown v. Kirk,* 127 Colo. 453, 257 P.2d 1045 (1953), to be as follows:

"[A]n exception takes something out of the land granted that would otherwise pass under a warranty deed, while a reservation is the creation in behalf of the grantor in the deed of a new right issuing out of the premises conveyed."

Thus, a reservation, as here, can benefit only the grantor, while such is not the case with an exception. *Brown v. Kirk, supra.*

However, Village does contend that the word "all" makes the deed ambiguous. We disagree.

The word "all" is not a word of novel import, but is part of the layman's everyday vocabulary. *Travelers Insurance Co. v. Cimarron Insurance Co.,* 196 F.Supp. 681 (D.Or.1961). "All" means the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with "every" and "each." *Knox Jewelry Co. v. Cincinnati Insurance Co.,* 130 Ga.App. 519, 203 S.E.2d 739 (1974). We adopt this definition as we conclude that it appropriately and unambiguously expresses the commonly understood meaning of the word "all". *See In re Marriage of Blair, supra; see also Estate*

*of Bourguin,* 87 Colo. 144, 286 P. 114 (1930).

Underlying Village's claim of ambiguity, then, is the mere fact that its interpretation of the deed does not comport with that of the plaintiffs. As a result, Village contends that the deed is ambiguous. We disagree.

 The fact that the parties differ as to the interpretation of the agreement does not necessarily create an ambiguity. *See Radiology Professional Corporation v. Trinidad Area Health Association, supra.* Therefore, we must give the deed effect as written.

It is axiomatic that a court must construe a deed or other conveyance so as to give force and effect to all of its provisions and terms, so as to make all of its provisions operative. *Dixon v. Abrams,* 145 Colo. 86, 357 P.2d 917 (1961); *see* Maxwell, *Colorado Oil and Gas Conveyancing In Context,* 56 Colo.L.Rev. 495 (1985). The conveyance from Ogren to Village is clear, and it left Village with an undivided one-half in the minerals in the entire tract, including the 60–acre parcel at issue here. The Ogren reservation of the other undivided one-half interest in the 380 acre tract is noted in the Village-to-Henderson deed in an exception clause including "other items and agreements of record."

We, therefore, conclude that the conveyance from Village to Henderson is not ambiguous, and that it reserved to Village an undivided one-half of its interest in the minerals in the 60–acre parcel, conveying the other undivided one-half of its interest in the minerals to Henderson. This conveyance had the effect of conveying to Henderson one-half of Village's one-half interest, or an undivided one-quarter interest in the minerals. *See Dixon v. Abrams, supra.*

We conclude that the deed is not ambiguous; and that its plain language granted one-quarter of all oil, gas, and minerals on the 60–acre tract to Henderson.

The judgment of the trial court is reversed and the case is remanded for entry of judgment in accordance with this opinion.

PLANK and NEY, JJ., concur.