Opinion by
Mr. Justice Day.
This suit was instituted by plaintiff K. K. Parsons *535 who claimed money due and owing on a sale of horses to defendants Lome Knisley and Yera Knisley.
The complaint alleged that an oral contract had been entered into for the sale of seven horses, including a stallion, Rio Dinero, at an agreed purchase price of $18,000. It further alleged that at the time of the sale in August, 1961, it was understood and agreed between the parties that the purchase price would be paid within a reasonable time; that a reasonable time had elapsed, and that $16,747.95 was the amount owed including interest calculated from the date of the agreement. Defendants filed an answer and counterclaim denying that the purchase price was to be paid within a reasonable time, but rather that payments were to be made by them only from the proceeds received from the sale and use of the horses which had been purchased.
In their counterclaim defendants asserted that the pedigree of Rio Dinero was misrepresented to them by plaintiff; and furthermore, that they were induced by this misrepresentation to agree to buy horses for a far greater price than their actual value.
Plaintiff in his reply to the counterclaim stated that the pedigree represented by him was thought by him to be reliable at the time he represented it to the defendants. Moreover, he asserted that discrepancies which appeared in the pedigree as furnished defendants by other sources were minor and did not affect the value of the horses. Additionally, he asserted that the counterclaim was barred by C.R.S. 1963, chapter 87 — the three-year statute of limitations.
The Parsons and the Knisleys at the time of the oral agreement were fellow horse breeders and close friends. Parsons had acquired Rio Dinero in 1952 when he was two years old. The Knisleys, doing business as Rimrock Ranch, agreed in 1961 to purchase the stallion, then 11 years old, for $10,000; the remaining $8,100 was the price for the other horses in the group. It was undisputed by the parties that payment was not to be made immediately, *536 but was to be made from time to time when the purchasers received proceeds from the sale and use of these horses. In the words of Mr. Knisley, it was anticipated that the horses “would and should pay for themselves.”
However, the expected return from the use of the horses did not materialize. Defendants blame the fact on the cloudy pedigree of Rio Dinero which prevented his becoming in demand for stud services. The testimony reflects the attempt of the Knisleys to conclusively establish his pedigree.
By March 23, 1966, the defendants had made payments on the contract of $5,650, and plaintiff at that time made a demand for payment in full within ten days. When payment was not forthcoming plaintiff filed suit. Trial was to a jury which brought in verdicts in favor of the plaintiff on his claim and in favor of the defendants on their counterclaim. Defendants assign error to the trial court’s judgment in favor of plaintiff, and plaintiff assigns cross error on the judgment in favor of defendants on their counterclaim. We affirm both judgments, but modify the one entered for plaintiff to correct an improperly calculated award of interest.
I.
Defendants’ assignments of error will be considered first. They strenuously urge that plaintiff did not plead nor prove by any evidence that defendants were required under the terms of the contract to make any payments at the time the suit was commenced. They assert that the following conditions in the contract were established during the trial:
1. Payment to be made if defendants received any stud fees from the services of the stallion.
2. Payment to be made if the defendants sold any of the offspring of the mares.
3. Payment to be made if defendants sold the stallion or sold any of the mares themselves.
4. Payment to be made when the defendants’ financial circumstances permitted them to do so.
*537 Defendants’ theory of the case is that these conditions — not any theory of reasonable time as alleged by plaintiff — set the time for payment; and that plaintiff failed to plead or prove that any payment was due pursuant to the conditions.
While it is true that plaintiff did not in his pleadings allege that any of these conditions had occurred, the evidence which was adduced at the trial does suggest that defendants may have failed to fully comply with some of the terms.
The first condition, that payment received from any stud fees from the services of the stallion be applied to the purchase price, is agreed by the parties to be part of their agreement. Mrs. Knisley testified that during the years in question only one fee was received for stud service of Rio Dinero and this was $100 which was turned over to plaintiff. However, there was considerable testimony that Rio Dinero was bred to various mares which belonged to friends or relations of the Knisleys and that no fee was charged for these services. On at least four occasions the Knisleys bred Rio Dinero to the same mare two years in succession, and they received, in return for the service, one of the offspring. The value of the offspring was never paid to plaintiff.
The second condition is disputed by the parties. Defendants claim that it was intended that only proceeds from the sale of the offspring of the mares which were purchased as part of the package with Rio Dinero be paid to plaintiff. Plaintiff claimed the proceeds of the sale of the offspring of Rio Dinero from other mares owned by the Rimrock Ranch. The pleadings and the evidence on this point are inconsistent and conflicting. It was for the jury to assess the testimony and the credibility of the witnesses and to make a determination as to which party it believed on this conflicting condition. The record reflects, and the parties stipulated, that defendants received $13,750 from the sale of offspring of Rio Dinero bred to its own mares through the years in question. These were *538 apparently predominately offspring of mares other than those purchased from Parsons. As stated, the total payments made to Parsons over the years in question were only $5,650.
Conditions three and four as asserted by the defendants were agreed upon by the parties, and no evidence was adduced at the trial to show that any proceeds from the sale of the horses in question had not been turned over to plaintiff. Nor did the plaintiff attempt to show that defendants were financially able to pay him the balance of the purchase price unless the $13,750 from the sale of Rio Dinero’s offspring out of the Rimrock Ranch mares could be deemed to meet the fourth condition.
In addition to the conditions asserted by defendants, plaintiff stated that it was agreed by the parties that a substantial payment was to be made on the purchase price in 1962, and that this was in fact not made. Plaintiff further asserted that the parties agreed that payment was to be made in a reasonable time, which defendants denied.
Defendants’ argument is, based on the theory that where a contract states the conditions to be met before payment is due, that the conditions must be pleaded and proved before plaintiff is entitled to recover. They urge this court to follow the rule as stated in Richardson v. Bricker, 7 Colo. 58, 1 P. 433, where the court stated:
“* * * the new promise was to pay when able, or to pay on the 30th of the current month, provided a sale of some coal land was effected. No evidence whatever was offered by plaintiff to show that, at the commencement of the action, defendant was able to pay the note, or that he had sold his coal land.”
See also Sanders v. Hart, 148 Colo. 133, 365 P.2d 42.
We do not believe that this statement is applicable to the case at bar for two reasons. First, as we have shown, there is evidence from which the jury could find that some of the conditions had in fact occurred that were conditions upon which payment was to be made, but that such *539 payment had not been received by plaintiff. Second, the plaintiff’s theory of the case is that payment was to be made in a reasonable time, and the jury, being properly instructed that plaintiff had the burden of proving this aspect of the argument by a preponderance of the evidence, as indicated by its verdict, did so find.
We think the better rule applicable to these facts is stated in 3A A. Corbin, Contracts § 641 (1960):
“In all cases the express words of the contract must be interpreted in the actual context of those words and in the light of all the surrounding circumstances. Such an interpretation may show that ‘ability’ to pay, was not intended to be a condition of the promise, but that the promise was that payment would be made at a reasonable time.”
A case construing this rule is Stansberry v. Manson, 420 P.2d 449 (Alaska). See also Sanford v. Luce, 245 Iowa 74, 60 N.W.2d 885; Mock v. Trustees of First Baptist Church, 252 Ky. 243, 67 S.W.2d 9.
We believe that the trial court correctly instructed the jury in the case at bar that they should consider whether a reasonable time had passed in which defendants should be required to make payment on the purchase price of these horses.
Defendants took possession of the horses in 1961. Suit was instituted in 1966. The jury could rationally find that this was a reasonable time within which to expect payment. Defendants had had the use of this stock for five years; during this time they never sought to rescind their contract. Rio Dinero, at the time of suit, was 16 years old, making his continued value as a stud of limited duration. We believe a reasonable construction of the contract required it to be paid by the time of suit.
While affirming the jury verdict in favor of the plaintiff on the unpaid balance of the principal sum due him, we reverse the award of interest included in that verdict.
It is not claimed that there was any agreement by the *540 parties that interest be paid on the unpaid balance of the purchase price. Interest therefore became due after payment became due. 'See C.R.S. 1963, 73-1-2.
Plaintiff is therefore entitled to interest at the statutory rate on the unpaid balance of the principal, $12,450, from the date that demand for payment was made, April 2, 1966. Suit was commenced approximately one month later.
II.
Plaintiff assigns cross error to the portion of the jury verdict awarding defendants a judgment on their counterclaim. In our view the judgment must be affirmed.
While it is undisputed that discrepancies in the pedigree represented to be correct by Parsons began to be apparent very soon after the Knisleys took possession of the horses, the evidence is disputed as to when they reasonably could have and in fact did discover the alleged fraud.
The jury was properly instructed on the requisites for proving fraud, and, if proved, on the necessity of finding that it could not with reasonable diligence have been discovered prior to three years before suit was commenced. Given their verdict, it is apparent that they so found. It is axiomatic that the jury’s determination of conflicting evidence will not be disturbed on review.
Judgment for plaintiff is modified and the cause is remanded to the trial court to vacate the judgment for interest awarded in the sum of $4,297.95, and to recalculate the interest on the principal sum from April 2, 1966, after first crediting the defendants with the set-off of their judgment of $6747.95 against plaintiff. The resulting balance is to be entered as judgment for the plaintiff. Judgment for the defendants on their counterclaim is affirmed.
Mr. Chief Justice McWilliams, Mr. Justice Pringle and Mr. Justice Hodges concur.