**FIRST CHRISTIAN ASSEMBLY OF GOD, MONTBELLO, a/k/a Kiddie C.A.T. Day Care Center, Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF DENVER, a Colorado municipal corporation, Defendant–Appellee.**

No. 04CA1449.

Colorado Court of Appeals, Div. A.

Sept. 22, 2005.

Gersh & Helfrich, LLP, Miles M. Gersh, James S. Helfrich, Denver, Colorado, for Plaintiff–Appellant.

Cole Finegan, City Attorney, Norman R. Bangeman, Assistant City Attorney, Victoria J. Ortega, Assistant City Attorney, Denver, Colorado, for Defendant–Appellee.

DAVIDSON, Chief Judge.

In this breach of contract action, plaintiff, First Christian Assembly of God, Montbello, appeals from the trial court's entry of summary judgment in favor of defendant, the City and County of Denver (the city). We reverse and remand.

Plaintiff operates a day care center for low-income families in Denver. From August 1999 to April 2002, plaintiff participated with the city in a program in which it agreed to decrease tuition, decrease class size, and increase pay for teachers. In return, the city agreed to reimburse plaintiff for the costs related to those changes. A formal contract was entered into in July 2000.

On March 28, 2002, the city terminated the contract and refused to reimburse plaintiff for any of the services it had provided.

The contract contained a mandatory dispute resolution clause. On May 17, 2002, plaintiff sent a letter to the city, requesting, "pursuant to the [dispute resolution clause], discussion to see if this matter can be resolved before other administrative proceedings may be needed." The city responded that plaintiff's request to invoke the dispute resolution procedure was untimely.

Plaintiff then filed a complaint, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. The parties filed cross-motions for summary judgment.

As relevant here, the trial court determined that plaintiff's attempt to initiate the required dispute resolution procedures was untimely and granted summary judgment in favor of the city based on lack of jurisdiction under C.R.C.P. 12(b)(1). Plaintiff now appeals.

 We review the trial court's interpretation of the parties' contract de novo. *See CMCB Enters., Inc. v. Ferguson,* 114 P.3d 90, 94 (Colo.App.2005).

## I.

The dispute resolution clause in the parties' contract provided:

All disputes of whatsoever nature between or among [the city and plaintiff] regarding this Agreement if not able to be resolved by informal discussion[s] among the parties, shall be resolved by administrative hearings pursuant to the procedure established by Denver Revised Municipal Code 56–106.

D.R.M.C. § 56–106 is titled "Administrative review and court proceedings" and is contained within an article of the municipal code pertaining to "Utilities—Sewers." It provides:

(a) Any person who disputes the amount of a charge or rate of charge made against his property or otherwise billed to or alleged to be owing from such person may request a revision or modification of such charge or rate from the agency or division of the department of public works assessing such charge. Such request shall be

made in writing *not later than one (1) year after having been billed for any such charge.* Compliance with the provisions of this subsection shall be a jurisdictional prerequisite to any action brought under the provisions of this section, and failure of compliance shall forever bar any such action.

Such agency or division shall issue a written determination granting or denying such request in whole or in part, which determination may be appealed pursuant to the remaining provisions of this section.

(b) Any person who disputes any determination made by or on behalf of the city pursuant to the authority of the manager, which determination adversely affects such person, may petition the manager for a hearing concerning such determination *no later than thirty (30) days after having been notified of any such determination.* Compliance with the provisions of this subsection shall be a jurisdictional prerequisite to any action brought under the provisions of this section, and failure of compliance shall forever bar any such action.

(c) The manager may hold such hearing himself or in his sole discretion may designate an officer or employee of the department of public works as a hearing officer with authority to hold such hearing or such hearings. The manager may also designate as a hearing officer a person retained for that purpose by contract under Charter section A2.3–10.

(d) Such petition shall be in writing, and the facts and figures submitted shall be submitted under oath or affirmation either in writing or orally at a hearing scheduled by the manager of public works or the hearing officer. The hearing, if any, shall take place in the city, and notice thereof and the proceedings shall otherwise be in accordance with rules and regulations issued by the manager of public works. The petitioner shall bear the risk of nonpersuasion, and the standard of proof shall conform with that in civil, nonjury cases in state district court.

(e) Thereupon, the manager of public works or his designee shall make a final determination. Such final determination

shall be considered a final order of the manager and may be reviewed under Rule 106(a)(4) of the state rules of civil procedure by the petitioner or by the city. A request for reconsideration of the determination may be made if filed with the manager of public works within fifteen (15) days of the date of determination, in which case the manager shall review the record if the proceedings were conducted by a designated hearing officer, and the determination shall be considered a final order of the manager upon the date the manager rules on the request for reconsideration.

(f) The district court of the second judicial district of the state shall have original jurisdiction in proceedings to review all questions of law and fact determined by the manager of public works by order or writ under Rule 106(a)(4) of the state rules of civil procedure.

(Emphasis added.)

The trial court determined that plaintiff's initiation of the administrative dispute resolution process was untimely because plaintiff did not begin the process within thirty days of the city's termination of the contract, as required under subsection (b) of § 56–106.

## II.

■ In the trial court, as well as on appeal, both parties frame the issue as whether the reference to § 56–106 in the parties' contract concerns only the procedures set forth in subsections (b) through (f), or whether subsection (a) is also included. If the latter is correct, as plaintiff urges, then the time limitation for initiating the dispute resolution process under § 56–106 is one year, not thirty days as determined by the trial court.

We conclude, however, that, by the plain terms of the parties' contract, plaintiff was not required to initiate the mandatory dispute resolution procedure within thirty days or even within one year, but could invoke the procedure just by requesting "informal discussions" within a "reasonable time." We further conclude that plaintiff has thirty days, not one year, from the unsuccessful conclusion of informal discussions to file a request for an administrative hearing under § 56–106(b).

■ "The meaning and effect of a contract [are] to be determined from a review of the entire instrument, not merely from isolated clauses or phrases." *Moland v. Indus. Claim Appeals Office*, 111 P.3d 507, 510 (Colo.App.2004). A contract should be interpreted to harmonize and, if possible, to give effect to all its provisions. *See Bedard v. Martin*, 100 P.3d 584, 588 (Colo.App.2004). The overriding rules of contract interpretation require a court to apply the plain meaning of the words used, *see Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 293 (Colo. 2005), subject to interpretation from the context and circumstances of the transaction. *See Horton–Cavey Realty Co. v. Spencer*, 37 Colo.App. 96, 544 P.2d 998 (1975).

Here, by its plain terms, the contract provides that a dispute shall be resolved by administrative hearings if it cannot be resolved by "informal discussions." This structure envisions a two-step process: first, the parties are to attempt "informal discussions," and second, if dissatisfied, either party may request an administrative hearing under § 56–106. Thus, as plaintiff points out, "the agreement itself only requires § 56–106 proceedings if a dispute 'is not able to be resolved by informal discussions among the parties.' "

We disagree with plaintiff, however, that the reference to § 56–106 in the contract includes subsection (a) as well as subsections (b) through (f). The contract does not refer to "administrative review," or "administrative procedures," but instead specifically states that if informal discussions fail, the dispute "shall be resolved by administrative *hearings* pursuant to the procedures established by [§ 56–106]" (emphasis added). Thus, although the reference to § 56–106, in isolation, could fairly be read to include all its subsections, the context shows that the reference to § 56–106 more narrowly indicates only the administrative hearing procedures contained in subsections (b) through (f).

Moreover, subsection (a) provides for an informal procedure, somewhat similar to the "informal discussions" mandated in the contract. If, as plaintiff contends, subsection (a) were included in the contract's dispute resolution process, two separate "informal" pro-

cedures would be required prior to an administrative hearing. We will not presume that such a redundant and cumbersome process was intended. *See M.R. Mansfield Realty, Inc. v. Sunshine,* 38 Colo.App. 334, 561 P.2d 342, 344 (1976) (interpretation that makes contract fair and reasonable preferable to one that leads to harsh or unreasonable results), *aff'd,* 195 Colo. 95, 575 P.2d 847 (1978); *Knisley v. Parsons,* 172 Colo. 533, 539, 474 P.2d 599, 602 (1970) ("[i]n all cases the express words of the contract must be interpreted in the actual context of those words and in light of all the surrounding circumstances," quoting 3A A. Corbin, *Contracts* § 641 (1960))

Plaintiff argues, with substantial merit, that as a matter of statutory construction, subsection (a) is inextricably intertwined with subsections (b) through (f). We also are aware that, in prior case law, § 56–106 has been described as a single administrative review process. *See City & County of Denver v. Dist. Court,* 939 P.2d 1353 (Colo.1997) (analyzing a similar dispute resolution clause on different grounds).

Here, however, we are interpreting the parties' contract, not the municipal ordinance. Thus, as the supreme court observed in *City & County of Denver v. District Court, supra,* 939 P.2d at 1366, it is significant that, in the dispute resolution portion of their contracts, the parties are free to "select ADR procedures contained in a municipal code promulgated to address disputes other than the type at issue in their contract." In doing so, we conclude, the parties are not constrained from inserting into their contracts, as we determine was intended here, only selected portions of an unrelated alternative dispute resolution procedure. *Cf. City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1365 (to be valid and binding, contractual ADR provisions need be only voluntary and knowing and provide for judicial review); *Kiewit W. Co. v. City & County of Denver,* 902 P.2d 421, 424 (Colo.App.1994).

Accordingly, contrary to the trial court's determination, because the first step in the contract's dispute resolution process is the initiation of "informal discussions," the dispositive time limitation at this juncture is not the thirty-day period set forth in subsection (b), but instead the question is whether plaintiff timely initiated "informal discussions." However, if "informal discussions" are unsuccessful, after written notification of that fact from the city, plaintiff must petition the city for an administrative hearing within thirty days of the date of such notification pursuant to the procedures set forth in subsections (b) through (f).

Here, the contract does not specify a time limitation within which informal discussions must be initiated. However, it is undisputed that plaintiff attempted informal discussions with the city within two months after the contract termination. Because as a matter of law, this is not an unreasonable amount of time, *see Colo–Tex Leasing, Inc. v. Neitzert,* 746 P.2d 972, 975 (Colo.App.1987) ("if a contract does not fix the time for performance, the law presumes that it is to be performed within a reasonable time"), we conclude that the trial court erred in its determination that plaintiff's initiation of the contract's dispute resolution process was untimely.

## III.

■ We disagree with plaintiff, however, that because of the city's actions, plaintiff need not participate in the contract's dispute resolution process.

When, as here, there is an agreed upon administrative remedy, a party generally must pursue the remedy before filing suit in state court. However, exhaustion is not necessary, as relevant here, when it would be futile or when the requirement is waived. *See City & County of Denver v. United Air Lines, Inc.,* 8 P.3d 1206, 1212 (Colo.2000).

■ Contrary to plaintiff's contentions, neither exception is applicable. Under the futility exception, exhaustion is not necessary when it is " 'clear beyond a reasonable doubt' that further administrative review by the agency would be futile because the agency will not provide the relief requested." *State v. Golden's Concrete Co.,* 962 P.2d 919, 923 (Colo.1998). Here, nothing in the record suggests that the city will not provide the relief requested by plaintiff. That the city believed plaintiff's invocation of the dispute resolution process to be untimely in no way indicates that plaintiff's claims will not now

be fully and fairly addressed. *Cf. City & County of Denver v. United Air Lines, Inc.,* supra, 8 P.3d at 1213 (exhaustion is futile where "the agency refuses to reconsider its decisions or procedures, or has stated a categorical rule to apply in a group [of] cases").

■ Nor has the city waived the dispute resolution process. A party's actions inconsistent with a right may constitute a waiver of that right. *See City & County of Denver v. Dist. Court,* supra, 939 P.2d at 1368–69. In contrast, by maintaining, pursuant to its interpretation of the dispute resolution clause, that plaintiff was untimely in contesting the city's determination, the city has attempted to honor the dispute resolution procedures, not repudiate the process. *Cf. Jefferson County Sch. Dist. No. R–1 v. Shorey,* 826 P.2d 830, 844 (Colo.1992) (school district waived exhaustion requirement where it repudiated the arbitration process expressly authorized in the parties' agreement); *Norton v. Sch. Dist. No. 1,* 807 P.2d 1160, 1165 (Colo.App.1990) (school district refused to process plaintiff's grievance because it claimed she was not covered by the bargaining agreement).

Based on our disposition, we do not address the parties' remaining contentions.

The judgment is reversed, and the case is remanded to the trial court with directions to stay judicial proceedings on plaintiff's claims pending determination of these claims through the administrative dispute resolution proceedings.

Judge WEBB and Judge NIETO * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and